UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                           Case No. 05-CR-311

RONALD MISERENDINO,

    Defendant.

**ORDER AND RECOMMENDATION RE: DEFENDANT'S PRETRIAL MOTIONS**

### I. BACKGROUND

On December 14, 2005, a federal grand jury sitting in the Eastern District of Wisconsin returned a nine-count indictment naming Ronald Miserendino ("Miserendino") as the defendant. [1] Count One charged the defendant with executing a scheme to obtain money from Firstar by means of material false and fraudulent pretenses, in violation of 18 U.S.C. § 1344. Counts Two through Seven charged the defendant with utilizing and attempting to utilize the U.S. mails in furtherance of his scheme to defraud, all in violation of 18 U.S.C. §§ 2 and 1341. Count Eight charged the defendant with transmitting a wire communication in interstate commerce in furtherance of his scheme to defraud, in violation of 18 U.S.C. §§ 2 and 1343. Count Nine charged the defendant with evading the assessment of tax, in violation of 26 U.S.C. § 7201.

---

[1] On April 11, 2006, a superseding indictment was returned against Miserendino and two additional defendants. However, the challenges made by Miserendino to the charges set forth in the original indictment would remain extant with regard to at least some of the charges which he is facing in the superseding indictment. Thus, this recommendation and order is being issued even though Miserendino and the two codefendants have not yet been arraigned on the superseding indictment.

On December 22, 2005, Miserendino was arraigned and entered a plea of not guilty to all counts. A final pretrial is scheduled to be conducted on June 8, 2006, and a jury trial is scheduled to be conducted before United States District Judge Lynn Adelman, commencing on June 19, 2006.

In accordance with the pretrial motion schedule, Miserendino has filed six pretrial motions: (1) a motion to strike portions of paragraph 9(e) of the indictment, (2) a motion to strike portions of paragraph 9(l) of the indictment, (3) a motion for a bill of particulars, (4) a motion to dismiss the indictment for duplicity, (5) a motion to dismiss the indictment for failure to state an offense, and (6) a motion to suppress evidence. The defendant's motions are now fully briefed and are ready for resolution. For the reasons which follow, the defendant's motions will either be denied or, where appropriate, a recommendation will issue that they be denied.

### III. DISCUSSION

*A. Motions to Strike Surplusage*

The defendant moves the court to strike two statements contained in paragraph nine (9) of the indictment. Miserendino asserts that two statements contained in paragraph nine of the indictment are prejudicial, irrelevant, and immaterial to the charges brought against him, and as such, should be stricken from the indictment. Paragraph (9)(e) of the indictment reads as follows:

> In February, 2001, the defendant obtained a $4.5 million loan from Firstar in the name of Trace. The defendant represented to Firstar that the loan would be used by Trace in connection with attempting to purchase an apartment complex. *At the same time, the defendant requested a $500,000 advance on Trace's line of credit at the bank.* The defendant pledged the U.S. Treasury bonds owned by Trace to secure these loans.

(Indictment at 3.) (emphasis added) Miserendino argues that the statement that he allegedly requested an advance of $500,000 on Trace's line of credit in February of 2001 is irrelevant and

2

immaterial to the charges brought against him and should be stricken as prejudicial. (Def.'s Mot. at 2, dkt. #9.) Specifically, Miserendino argues that the reference to the $500,000 advance is irrelevant and immaterial to the charges brought against him because it is not alleged to be part of the purported scheme to defraud as set forth in the indictment. (Def.'s Mot. at 3, dkt. #9.)

Paragraph (9)(l) of the indictment reads as follows:

> *In November, 2001, the defendant transferred the two remaining pieces of real estate owned by Trace Maui to his then-girlfriend for $10 each.* The vacant lot was then sold. The proceeds from this sale, which totaled approximately $190,300, were deposited to the Trace Maui account and then withdrawn by the defendant in cash.

(Indictment at 5.) (emphasis added). Miserendino argues that the reference to the sale of the second vacant parcel of land to his former girlfriend is irrelevant and immaterial to the charges brought against him and as such, should be stricken from the indictment. (Def.'s Mot. at 2-3, dkt. #10.) Miserendino asserts that this reference unfairly suggests that Miserendino transferred Trace assets to his former girlfriend without the corporation receiving adequate compensation, when in fact, the corporation suffered no loss based on this transfer. (Def.'s Mot. at 3, dkt. #10.) Thus, Miserendino argues that the inclusion of this statement would only serve to unduly prejudice him in the eyes of the jurors.

In response, the government asserts that both statements concern actions undertaken by Miserendino to obtain assets belonging to Trace, or its wholly owned subsidiary, Trace Maui, and that, as the indictment alleges, in both instances, Miserendino converted the proceeds from these transactions to his own benefit. (Gov't's Resp. at 12.) Thus, in direct contravention to the defendant, the government argues that both of the challenged statements are indeed relevant to the overall scheme to defraud alleged in the indictment.

3

Federal Rule of Criminal Procedure 7(d) provides that "[u]pon the defendant's motion, the court may strike surplusage from the indictment." The Advisory Committee Notes to subdivision (d) explains that the "rule introduces a means of protecting the defendant against immaterial or irrelevant allegations in an indictment or information, which may, however, be prejudicial." In other words, "legally relevant information is not surplusage." *United States v. Bucey*, 691 F. Supp. 1077, 1081 (N.D. Ill. 1988). Moreover, motions to strike surplusage under Fed. R. Civ. P. 7(d) are granted "only if the targeted allegations are *clearly not* relevant to the charge *and* are inflammatory and prejudicial." *United States v. Andrews*, 749 F. Supp. 1517, 1518 (N. D. Ill. 1990) (internal quotations omitted). This is an exacting standard, and only rarely has surplusage been ordered stricken. *Andrews*, 749 F. Supp. at 1519; *see also United States v. Carroll*, 320 F. Supp.2d 748, 760-61 (S.D. Ill. 2004) (stating that the standard to strike surplusage is an "exacting one that allows language to be stricken only if it is clearly not legally relevant").

As previously noted, only irrelevant *and* prejudicial information will be stricken from an indictment. Indeed, it would be unwise to exclude prematurely material that may be relevant to the crimes charged in an indictment. In this case, while it may be true that Trace Maui was fully compensated for the sale of the second vacant lot to Miserendino's girlfriend and that there was nothing suspicious about Miserendino's request for a $500,000 advance on Trace's line of credit, it is not clear that these transactions are legally irrelevant in proving the counts relating to fraud. Simply put, I cannot say, at this time, that Miserendino's request for a $500,000 advance on his line of credit is clearly irrelevant to the crimes with which Miserendino has been charged. Nor is it clear, at this time, that Miserendino's transfer of the second vacant parcel of land to his former girlfriend for a nominal charge is clearly irrelevant to the crimes with which Miserendino has been charged.

4

Such being the case, the defendant's motion to strike portions of paragraph 9(e) of the indictment and the defendant's motion to strike portions of paragraph 9(l) of the indictment will be denied.

*B. Motion for a Bill of Particulars*

Miserendino moves the court for a bill of particulars. Specifically, he asserts that in order for him to be properly notified of the charges against him and to adequately prepare his defense, the government should be ordered to make the following disclosures in a bill of particulars:

> a. What is the amount of the unreported income which is the subject of Count Nine of the Indictment and what is the nature of it, i.e., ordinary income, dividends, salary, etc.?
>
> b. Is the draw down of the $500,000 on the line of credit alleged to be a product of the fraud? If so, is the allegation that the draw down on the line of credit was the product of "false and fraudulent pretenses and representations" and, if so, what were those pretenses and representations?
>
> c. Is it the position of the prosecution that the indictment alleges three separate schemes to defraud, i.e., of the wife, of Trace Corporation, and of Firstar Bank?
>
> d. As of what date is it alleged that each of the schemes were completed?
>
> e. In paragraph 10 of the indictment, it is alleged that the defendant converted to his own benefit assets in excess of $5 million. Describe each of said assets and their amount.
>
> f. When is it that the defendant was "no longer the President of Trace."
>
> g. What is alleged to be the source of the taxable income of $4,312,599 reported by the defendant on his Form 1040 for the year 2001?
>
> h. What is the additional tax that is alleged to be due from the defendant for the year 2001?
>
> i. The allegations of Count Nine state that the defendant attempted to defeat the income tax due and owing by him "on or about April 15, 2002, in the State and Eastern District of Wisconsin and elsewhere, including the State of Hawaii." What days other than April 15, 2002 are alleged?

5

j. What act or acts were performed in the State and Eastern District of Wisconsin, in the State of Hawaii and at "elsewhere", and where is "elsewhere?"

(Def.'s Mot. at 2-3.) Furthermore, Miserendino contends that the information listed above is within the knowledge and control of the government and cannot be obtained by the defendant except through a court order.

Rule 7(f) of the Federal Rules of Criminal Procedure allows, in conjunction with the issuance of an indictment, for the filing of a bill of particulars. *United States v. Canino*, 949 F.2d 928, 949 (7th Cir. 1991); Fed. R. Crim. P. 7(f). A bill of particulars more precisely describes the illegal activities in which the defendant allegedly engaged, *Canino*, 949 F.2d at 949, and provides the defendant with information sufficient to prepare an adequate defense to the charges and to protect himself against double jeopardy. *United States v. Glecier*, 923 F.2d 496, 502 (7th Cir. 1991).

In determining whether a bill of particulars is required, the court should consider the following factors: (1) whether the indictment states all of the elements of the offense charged; (2) whether the indictment sufficiently informs the defendant of the nature of the charge so that the defendant may prepare a defense; and (3) whether the defendant may plead the judgment as a bar to any later prosecution for the same offense. *United States v. Serola*, 767 F.2d 364, 369 (7th Cir. 1985); *United States v. Gironda*, 758 F.2d 1201, 1209 (7th Cir.1985). An indictment satisfies this standard by setting forth the elements of the offense charged, the time and place of the defendant's conduct which violated that offense, and citation to the statutes allegedly violated. *United States v. Fassnacht*, 332 F.3d 440, 446 (7th Cir. 2003).

However, "a defendant has no right to discover, through a bill of particulars, the evidentiary details of the government's case." *United States v. Brock*, 863 F. Supp. 851, 867 (E.D. Wis. 1994).

6

Nor is a bill of particulars intended to be used to reveal the theory of the government's case. *Glecier*, 923 F.2d at 502. Furthermore, "a bill of particulars is not required when information necessary for a defendant's defense can be obtained through 'some other satisfactory form.'" *Canino*, 949 F.2d at 949 (quoting Wright, *Federal Practice and Procedure: Crim.2d*, § 129, at 436-38 (1982)). For example, "the 'open-file' policy is an adequate 'satisfactory form' of information retrieval, making the bill of particulars unnecessary." *Id.*

The indictment in this case states all of the elements of the offenses charged; it informs Miserendino of the nature of the charges so that he might prepare a defense; and, the language of the indictment is sufficient for Miserendino to plead any judgment entered as a bar to any later prosecution for the same offenses. *See Serola*, 767 F.2d at 369. Furthermore, the government is complying with its open file policy in this case, (Gov't's Resp. at 16.) which gives Miserendino full access to the evidence in the government's possession, and further reduces the need for a bill of particulars. *See Canino*, 949 F.2d at 949. Thus, Miserendino has already received (and will continue to receive) the information and materials identified in Crim. L. R. 16.1. Indeed, the bill of particulars sought by Miserendino would essentially identify the facts that the government intends to use to prove its case against him. This is not the purpose of a bill of particulars. Simply put, the information provided in the indictment and through the government's open file policy is sufficient to allow Miserendino to prepare an adequate defense. Consequently, Miserendino's motion for a bill of particulars will be denied.

C. *Motion to Dismiss Indictment for Duplicity*

Miserendino argues that the indictment should be dismissed because each count of the indictment is duplicitous. More precisely, the defendant asserts that "[e]ach of counts one through

eight . . . violate[] FRCP 8(a) because each count charges the defendant with multiple offenses." (Def.'s Mot. at 2, dkt. #13.) Furthermore, the defendant asserts that count nine is duplicitous because it "charges seven separate acts that are not part of a single continuing course of conduct." (Def.'s Mot. at 2, dkt. #13.)

In determining whether a particular count is duplicitous, the Seventh Circuit has stated as follows:

> " 'Duplicity' is the joining of two or more offenses in a single count." *United States v. Marshall*, 75 F.3d 1097, 1111 (7th Cir.1996). We have explained that "the prohibition of duplicitous counts is embodied in Rule 8(a) of the Federal Rules of Criminal Procedure, which provides for 'a separate count for each offense.' " *United States v. Berardi*, 675 F.2d 894, 897 n. 5 (7th Cir.1982). However, an indictment charging multiple acts in the same count, each of which could be charged as a separate offense, may not be duplicitous where these acts comprise a continuing course of conduct that constitutes a single offense. *See id.* at 898.

*United States v. Buchmeier*, 255 F.3d 415, 421 (7th Cir. 2001). A duplicitous indictment impermissibly prejudices the defendant.

> The overall vice of duplicity is that the jury cannot in a general verdict render its finding on each offense, making it difficult to determine whether a conviction rests on only one of the offenses or both. Adverse affects on a defendant may include improper notice of the charges against him, prejudice in the shaping of evidentiary rulings, in sentencing, in limiting review on appeal, in exposure to double jeopardy, and of course the danger that a conviction will result from a less than unanimous verdict as to each separate offense.

*United States v. Marshall*, 75 F.3d 1097, 1111 (7th Cir. 1996).

With respect to counts one through eight, the defendant argues that the alleged acts cannot be fairly characterized as a single scheme comprising a continuing course of conduct because they "involve three unrelated victims, no alleged common purpose, and would have taken place at unspecified and disconnected junctures over a lengthy period of time." (Def.'s Br. at 3, dkt. #14.)

8

I disagree. The common allegations for counts one through eight (set forth in paragraphs one through ten of the indictment) describe a single scheme in which the defendant allegedly "obtained money by means of material false and fraudulent pretenses and representations." (Indictment at 1.)

To be sure, there are multiple alleged victims of the overall scheme, i.e., Firstar, Trace Corporation ("Trace"), Trace Maui Corporation ("Trace Maui"), and Miserendino's ex-wife, who under Wisconsin marital property law had a one-half interest in the assets of both Trace and Trace Maui. Consequently, the defendant argues that the indictment does not allege a single scheme. Rather, the defendant argues that the indictment must allege separate schemes, one scheme for each of the alleged victims. (Def.'s Mot. at 1, dkt. #13.) Once again, I disagree. Although the overall scheme has multiple alleged victims, and particular acts done in furtherance of the scheme may have more than one alleged victim, it does not necessarily follow that multiple schemes must be alleged. In this case, all of the acts done in furtherance of the scheme were performed by the same individual, Miserendino, the victims are sufficiently related to one another, and the series of acts performed are sufficiently related to one another. Simply put, the indictment alleges a single scheme to defraud.

Furthermore, counts one through eight are not duplicitous because none of those counts combine two or more offenses. Indeed, count one charges a single offense, bank fraud, based upon a single act, that is, the defendant's alleged application on behalf of Trace Corporation for a loan in the amount of $4.5 million, which act was allegedly done in furtherance of the scheme set forth in paragraphs one through ten of the indictment. Similarly, counts two through seven, respectively, allege a single offense, mail fraud, and each is based upon a single mailing done in furtherance of the alleged scheme set forth in paragraphs one through ten of the indictment. Count eight also

9

alleges a single offense, wire fraud, based upon a single wire communication executed in furtherance of the alleged scheme set forth in paragraphs one through ten of the indictment.

Miserendino also asserts that count nine is impermissibly duplicitous. Specifically, the defendant asserts that each of the seven acts listed in count nine constitutes a separate alleged violation of 26 U.S.C. § 7201. (Def.'s Mot. at 4, dkt. #14.) Thus, because seven separate violations of Section 7201 are alleged in one count, count nine is duplicitous. Count nine charges the defendant with attempting to evade the assessment of tax by preparing a false and fraudulent 2001 U.S. Individual Income Tax Return and by the following affirmative acts:

> a. The defendant obtained a $4.5 million loan from Firstar in the name of Trace Corporation ("Trace"). The defendant directed Firstar to disburse the proceeds from this loan to him personally.
>
> b. The defendant obtained a $500,000 advance on Trace's line of credit at Firstar. The defendant again directed Firstar to disburse the proceeds from this advance to him personally.
>
> c. The defendant directed his son to convert the loan proceeds checks issued by Firstar into cashier's checks payable to the defendant. The defendant converted these cashier's checks to cash.
>
> d. The defendant converted to his own benefit, and the benefit of others, proceeds from the liquidation of ten U.S. Treasury bonds owned by Trace. To facilitate and conceal his conversion, the defendant, and others acting at the defendant's direction, converted these proceeds to cash.
>
> e. The defendant transferred real estate owned by Trace Maui to a nominee and then sold and attempted to sell the property.
>
> f. The defendant converted to his own benefit and to the benefit of others, the proceeds from the sale of real estate owned by Trace Maui. To facilitate and conceal his conversion, the defendant converted the sale proceeds to cash.

(Indictment at 9-10.)

Although a count charging more than one offense is duplicitous, if a count simply charges the commission of a single offense by different means, the count is not duplicitous. *United States v. Berardi*, 675 F.2d 894, 897 (7th Cir. 1982). Federal Rule of Criminal Procedure 7(c) provides that "[i]t may be alleged in a single count that the means by which the defendant committed the offense are unknown or that he committed it by one or more specified means." This rule necessarily contemplates that two or more acts, each one of which may constitute an offense standing alone, may be joined in a single count without offending the rule against duplicity. *Berardi*, 675 F.2d at 898. In this case, count nine alleges that the defendant committed tax evasion and specifies one or more means by which the defendant sought to evade the assessment of tax. Specifically, the defendant sought to evade the assessment of tax by filing a fraudulent tax return and by engaging in the acts enumerated in "a" through "f" above. Thus, pursuant to Rule 7(c), count nine simply lists various means by which the defendant sought to evade the assessment of tax in violation of 26 U.S.C. § 7201.

Furthermore, even assuming, arguendo, that the seven acts listed in count nine constitute seven separate violations of section 7201, it still does not follow that count nine is impermissibly duplicitous. This is because the seven acts listed in count nine can be fairly said to constitute a continuing course of conduct. As previously stated, the government may charge separate acts as one offense if the acts comprise a continuing course of conduct. *Buchmeier*, 255 F.3d at 421. Consequently, and for all of the foregoing reasons, it will be recommended that the defendant's motion to dismiss the indictment for duplicity be denied.

*D. Motion to Dismiss for Failure to State an Offense*

Miserendino argues that counts one through eight of the indictment should be dismissed because each count fails to state an offense. Specifically, Miserendino asserts that the allegations that he defrauded Trace Corporation are legally impossible. This is because Miserendino and his son, who was also allegedly involved in the scheme to defraud Trace, were the only officers and shareholders of Trace at the time the scheme is alleged to have occurred. Thus, "[b]ecause all of the acts that allegedly constitute a scheme to defraud Trace were done by, and with the prior knowledge and approval of, all of the alleged victims, in this case [Trace's] owners and officers [Miserendino and his son], it is impossible for a fraud to have been committed." (Def.'s Br. at 3, dkt. #16.)

It is a basic principle of the law of corporations that a corporation and its shareholders are separate and distinct legal entities. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003). Thus, by electing to form a corporation, albeit a closely held one, Miserendino created an entity separate and distinct from himself, one that would afford him limited liability for the debts of his business. Yet, "[w]hen certain state-governed requirements are met, the alter ego theory allows the legal distinction between a corporation and its shareholders . . . to be disregarded . . . in order to reach the assets of those individuals 'behind the corporation.'" *Koch Refining v. Farmers Union Cent. Exchange, Inc.*, 831 F.2d 1339 (7th Cir. 1987). This need to extinguish the legal separateness of the corporation from its individual shareholders arises whenever limited liability would "'defeat some strong equitable claim.'" *Id.* (quoting *Matter of Kaiser*, 791 F.2d 73, 75 (7th Cir.1986)).

The gist of Miserendino's argument is that the court should disregard the corporate form of Trace under the "alter ego" theory thereby "leaving no corporate entity to be victimized by the alleged fraud." (Def.'s Br. at 3, dkt. #16.) Indeed, Miserendino argues that Trace was his "alter ego"

12

and thus, the corporate form should be disregarded, that is, the court should pierce Trace's "corporate veil." (Def.'s Br. at 2, dkt #16.) Miserendino further asserts that

> [u]nder Wisconsin law, a shareholder's act will be treated as a corporate act and the existence of the corporation as an entity apart from the natural persons comprising it will be disregarded, if corporate affairs are organized, controlled, and conducted so that the corporation has no separate existence of its own and is the mere instrumentality of the shareholder and the corporate form is used to evade an obligation, to gain an unjust advantage or to commit an injustice. *Wiebke v. Richardson & Sons, Inc.*, 83 Wis.2d 359, 363 (1978).

(Def.'s Br. at 2, dkt. #16.)

In general, "the corporate veil is never pierced for the benefit of the corporation or its stockholders; the procedure is only permissible against a purported stockholder who is using the corporate veil to defraud." *Am. Jur. Corporations* § 49 (2005); *see also Bank of America Corp. v. Lemgruber*, 385 F. Supp. 2d 200, 223 (S.D.N.Y. 2005) (stating that courts "will not 'pierce the corporate veil' in favor of those who created that veil") (internal quotations omitted). Having chosen to form a corporation, Miserendino cannot now claim to be the alter ego of Trace and ask the court to disregard the corporate form he created simply because doing so will assist him in his defense of the fraud charges against him. Indeed, the corporate form "may be disregarded only where *equity* requires the action to *assist a third party*. Accordingly, a sole shareholder may not choose to ignore the corporate entity when it suits his convenience." *North Dakota Mill & Elevator Ass. v. Nat'l Flour Co.*, 1992 WL 81325 (N.D. Ill. 1992) (emphasis added) (internal quotations omitted).

To disregard the corporate form of Trace Corporation in the situation at bar (given the allegations in the indictment) would be contrary to the principles upon which the doctrine of disregarding the separateness of the corporate entity rests. Accordingly, having found that Trace Corporation is a separate and distinct legal entity, and thus a separate "victim" of the defendant's

13

alleged fraud, it will be recommended that Miserendino's motion to dismiss the indictment for failure to state an offense be denied.

*E. Motion to Suppress*

Miserendino seeks suppression of several keys and an address book, which he claims were obtained pursuant to a defective search warrant, as well as the fruits of such illegal search, i.e. any property or cash seized from safety deposit boxes located and accessed based upon the government's review of the address book. (Def.'s Mot. at 1, dkt #17.) At the time of Miserendino's arrest in the District of Oregon, on November 12, 2005, the government recovered property from Miserendino's person, his passenger, and from his car, including the keys and address book. On November 18, 2005, counsel for Miserendino filed a motion requesting the return of all property recovered from the defendant at the time of his arrest. (Def.'s Mot. at 1, dkt. #17.) On November 21, 2005, the magistrate judge denied Miserendino's motion as moot, and informed Miserendino that the court had previously authorized a search of the aforementioned property. At the same hearing, however, the government informed the magistrate judge that he had failed to sign the application for the search warrant and the magistrate agreed to sign the application and to make it effective as of earlier that morning when the search had occurred. (Def.'s Mot. at 2, dkt. #17.)

The defendant argues that this "after-the-fact attempt to cure the defective nature of the warrant is contrary to the dictates of Federal Rule of Criminal Procedure 41." (Def.'s Mot. at 2, dkt. #17.) Specifically, the defendant asserts that the agents conducting the search may have recognized the defect in the warrant and continued the search, despite the pending motion requesting the return of Miserendino's property. In support of its argument that the validity of the search warrant should be upheld, the government asserts that the defendant has failed to cite any authority for the

14

proposition that the failure of a magistrate judge to sign an *application* for a search warrant makes such warrant inherently defective. And, even if such a requirement was compelled by Rule 41, the government argues that a magistrate judge's failure to sign an application would not compel suppression of the evidence recovered. (Gov't's Resp. at 14.)

In the end, Miserendino's argument cannot carry the day. This is because the magistrate judge in this case did indeed sign (i.e. notarize) the affidavit in support of the search warrant, which affidavit established probable cause and which was attached to and expressly incorporated into the application for the search warrant. (Def.'s Mot., Ex. B., dkt. #17.) To be sure, Rule 41 provides that "[a]fter receiving an affidavit or other information, a magistrate judge . . . must issue the warrant if there is probable cause to search for and seize . . . [the] property." F. R. Crim. P. 41. In this case, however, it is undisputed that the magistrate judge found probable cause for the issuance of the warrant, signed the warrant, and notarized the affidavit, which was attached to and expressly incorporated into the application for the warrant. Furthermore, even if the judge's failure to sign the application could be considered a "technical defect" in the warrant, such defect would not compel suppression of the evidence recovered and the fruits thereof. *United States v. Trost*, 152 F.3d 715, 722 (7th Cir. 1998) ("It should be clear after *United States v. Leon*, 468 U.S. 897 (1984), that technical defects in a warrant do not call for or permit exclusion of what the search produces.") (internal quotations omitted). Accordingly, it will be recommended that the defendant's motion to suppress be denied.

## IV.  ORDERS AND RECOMMENDATIONS

**NOW THEREFORE IT IS ORDERED** that the defendant's motion to strike portions of paragraph 9(e) of the indictment (dkt. #9) be and hereby is **DENIED**;

15

**IT IS FURTHER ORDERED** that the defendant's motion to strike portions of paragraph 9(l) of the indictment (dkt. #10) be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that the defendant's motion for a bill of particulars (dkt. #11) be and hereby is **DENIED**;

**NOW THEREFORE IT IS RECOMMENDED** that the defendant's motion to dismiss the indictment for duplicity (dkt. #13) be **DENIED**;

**I`T IS FURTHER RECOMMENDED** that the defendant's motion to dismiss the indictment for failure to state an offense (dkt. #15) be **DENIED**;

**IT IS FURTHER RECOMMENDED** that the defendant's motion to suppress evidence (dkt. #17) be **DENIED**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) - (C), Federal Rule of Criminal Procedure 59(a) - (b), and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any order or recommendation herein or part thereof may be filed within ten days of the date of service of this recommendation and order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to object in accordance with the rules cited herein waives your right to review.

**SO ORDERED** this <u>26th</u> day of April, 2006, at Milwaukee, Wisconsin.

/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge
