**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**UNITED STATES OF AMERICA**
**Plaintiff,**

**v.** **Case No. 05-CR-311**

**BORIS ALEXEEV**
**Defendant.**

---

## SENTENCING MEMORANDUM

The government indicted defendant Boris Alexeev for conspiring to launder money, contrary to 18 U.S.C. § 1956(h). The charges arose out of defendant's efforts to assist Ronald Miserendino, his sister's then-boyfriend, to conceal the proceeds of Miserendino's fraud scheme, some $4.8 million. Pursuant to an agreement with the government, defendant pleaded guilty to an information charging him with structuring financial transactions to evade currency reporting requirements, contrary to 31 U.S.C. § 5324(a)(3). However, the parties' agreement also contained a stipulation pursuant to U.S.S.G. § 1B1.2 that defendant's sentencing guideline range would be calculated based on the more serious offense of money laundering. Those guidelines produced a range of 46-57 months in prison.[1]

The government recommended a non-guideline sentence of 24 months under 18 U.S.C. § 3553(a), while defendant requested a sentence of probation with a condition of home detention. Under all of the circumstances, I agreed with the government that prison was

---

[1] Under the money laundering guidelines, defendant's base offense level was 8, U.S.S.G. § 2S1.1(a)(2); plus 18 based on the amount involved, §§ 2S1.1(a)(2) & § 2B1.1(b)(1)(J); plus 2 because the offense arose under 18 U.S.C. § 1956, § 2S1.1(b)(2)(B); minus 2 for minor role in the offense, § 3B1.2(b); and minus 3 for acceptance of responsibility, § 3E1.1, producing a final level of 23.

necessary in this case. I therefore imposed a sentence of 12 months total confinement, split into 6 months prison and 6 months home detention. This memorandum sets forth the reasons for the sentence imposed. See 18 U.S.C. § 3553(c).

## I. SENTENCING METHODOLOGY

In imposing sentence, the district court must first calculate the advisory guideline range, then select an appropriate sentence under all of the factors set forth in 18 U.S.C. § 3553(a). United States v. Holt, 486 F.3d 997, 1004 (7th Cir. 2007); see also Gall v. United States, 128 S. Ct. 586, 596 (2007); United States v. Harris, 490 F.3d 589, 593 (7th Cir. 2007), cert. denied, 128 S. Ct. 963 (2008). In the present case, without objection I adopted the guideline range of 46-57 months recommended in the pre-sentence report.

I turned then to § 3553(a), which requires the court to consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

After considering these factors, the court must impose a sentence that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing – just punishment, deterrence, protection of the public and rehabilitation of the defendant. § 3553(a)(2). This so-called "parsimony provision" represents the "overarching" command of the statute, Kimbrough v. United States, 128 S. Ct. 558, 570 (2007), and serves as "the guidepost for sentencing decisions post-Booker," United States v. Ferguson, 456 F.3d 660, 667 (6th Cir. 2006). The district court must make an independent determination of what sentence is sufficient, but not greater than necessary, taking into account the advisory guidelines range, the relevant § 3553(a) factors, and any other non-frivolous arguments presented in support of a particular sentence. United States v. Wilms, 495 F.3d 277, 282 (6th Cir. 2007). The court may not presume that the guideline sentence is the correct one, Rita v. United States, 127 S. Ct. 2456, 2465 (2007), or place "any thumb on the scale favoring a guideline sentence." United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007); see also United States v. Demaree, 459 F.3d 791, 794-95 (7th Cir. 2006), cert. denied, 127 S. Ct. 3055 (2007) (stating that while § 3553(a)(4) "nudges" the court towards the guideline range, the court's "freedom to impose a reasonable sentence outside the range is unfettered").

## II. DISCUSSION

### A. Nature of Offense

As indicated above, this prosecution arose out of the government's investigation of Ronald Miserendino, who devised and carried out a scheme to defraud his then-wife, the

corporation he operated and a bank that loaned the company money. The details of the scheme are unimportant, but Miserensino fraudulently obtained around $5 million, most of which he converted to cash; his primary motive appeared to be preventing his wife from obtaining her share of the couple's assets during their divorce. I sentenced Miserendino to four years in prison for his conduct.

As part of his scheme, Miserendino transported about $4.8 million in cash to Australia, which he placed on safe deposit boxes. At Miserendino's request, defendant traveled from his home in Portland, Oregon to Australia on three occasions and retrieved a total of $1.9 million. According to Miserendino, defendant kept about 10% for himself and provided the rest to Miserendino. Defendant claimed to receive only $25,000, but as the government noted at sentencing, defendant's bank deposits supported Miserendino's version.

During the months after Miserendino's first trip to Australia defendant made numerous cash deposits to his bank account totaling about $172,500. During the months after Miserendino's arrest in this case in November 2005, defendant deposited another $471,000, some of which he used to purchase a residence and a vehicle. In December 2005, defendant deposited another $100,000 in proceeds of Miserendino's scheme into a bank account, which he used to pay Miserendino's lawyer. Later in December 2005, defendant testified falsely at Miserendino's bond hearing, claiming that he had never given Miserendino any significant amount of money and that Miserendino had never given him more than $500. In March 2006, defendant deposited another $100,000 in proceeds of Miserendino's scheme into his bank account, which he again used to pay Miserendino's lawyers. Pursuant to recorded phone calls after Miserendino's arrest, the government also learned of about $570,000 in cash proceeds that defendant retained in his home, and that the two were trying to create the false impression

that Miserendino had no money and defendant was loaning him funds to pay his lawyer. In April 2006, Miserendino solicited defendant to retrieve the rest of the Australian funds, but defendant was arrested before he could do so, and Australian authorities seized the money at the government's behest.

Regarding the specific structuring activities, which formed the basis for the offense of conviction, defendant made numerous cash deposits (using the proceeds of Miserendino's scheme) designed to evade currency transaction reporting requirements. As indicated above, while defendant pleaded guilty to structuring, the parties agreed that the guidelines should be based on money laundering, as defendant's actions assisted Miserendino in secreting the proceeds of his fraud. Thus, the guideline range was based primarily on the $4.8 million Miserendino laundered, even though defendant's gain from the scheme – under either his or Miserendino's version – was much less. The parties also agreed that defendant's role in the conspiracy overall was minor, that he acted at Miserendino's direction, and that he played no role in the underlying fraud.

**B. Character of Defendant**

Defendant was forty-seven years old and his prior record consisted of a few minor offenses – trespassing, contempt of court and drunk driving. Because only the drunk driving offense scored under U.S.S.G. § 4A1.2(c), he fell in criminal history category I.

A well-educated man, defendant earned a master's degree in his native Russia, where he also served in the military. He came to this country in 1993 and became a permanent resident alien a few years later, but his future status in this country was somewhat uncertain based on his conviction in this case. Defendant worked as a federally licensed firearms dealer but was forced to liquidate the business based on this conviction, which also jeopardized his

license.

Defendant was married and his wife, who had been charged in this case but was later dismissed, made positive statements about him. She indicated that he developed a good relationship with her adult children and her mother, who lived with them and required constant care based on serious health problems. Defendant looked after his mother-in-law during the day, while his wife worked. The defense indicated that no one else was available to provide care – defendant's step-children also worked full-time, and government assistance was unavailable because the mother-in-law is not a citizen.

Defendant presented a history of mental health problems, with a diagnosis of bi-polar disorder, for which he took medication. His doctor indicated that during manic episodes defendant was "grandiose, impulsive, and reckless in his decision making," and that his mental illness could have "altered his ability to make sound judgments." The record also suggested that defendant had a problem with alcohol abuse (he committed the drunk driving offense during the pendency of this case), but he stated that his drinking was a response to stress caused by the prosecution. I saw no other, significant correctional treatment issues. See 18 U.S.C. § 3553(a)(2)(D).

**C. Purposes of Sentencing**

The guidelines recommended 46-57 months in prison, but as discussed above, this range was significantly inflated by the amount of money Miserendino laundered, an amount defendant had no role in selecting and an amount far in excess of defendant's gain or even the amount he personally handled. Recognizing that the § 3553(a) factors warranted a sentence below the range, the government recommended 24 months, ½ of Miserendino's term. I agreed that the guidelines' recommendation was greater than necessary to satisfy the purposes of

sentencing, and that defendant deserved a sentence far less than Miserendino.

Defendant asked for a sentence of probation with a condition of home confinement based on the need to care for his mother-in-law, his mental health problems and the collateral consequences he faced. These factors merited some consideration under § 3553(a), but I ultimately agreed with the government that a sentence with no prison component would fail to provide just punishment. I concluded, however, that a sentence of less than 2 years' imprisonment would suffice.

Given his age, education and minimal prior record, I found that defendant presented little if any threat to the public, particularly if he were closely monitored and received mental health treatment. See 18 U.S.C. § 3553(a)(2)(C). Because he had never been to jail before, I also found a short prison term sufficient to deter him from re-offending. See § 3553(a)(2)(B). Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend. United States v. Qualls, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005).

Given his minor role in the offense, the possible contribution of his mental health problems to his behavior, and the significant collateral consequences he faced – including the loss of his firearms business and possible deportation – I found that the need for just punishment could be satisfied with a modest period of confinement. However, given the length of time during which defendant participated in this scheme and the amounts involved, a prison component was necessary. Defendant's mental health problems may have explained some of his poor judgment, but given the numerous acts defendant engaged in as part of this scheme, some of which seemed more calculated than impulsive, his mental illness really

provided an imperfect explanation for his conduct. I also considered defendant's false statements to the magistrate judge during Miserendino's bond hearing.

Under all of these circumstances, I concluded that a total period of confinement of 12 months – split into 6 months imprisonment followed by 6 months of home detention – was sufficient to provide just punishment. See § 3553(a)(2)(A). In electing to split the sentence, I considered the needs of defendant's mother-in-law, as defendant could provide care during the home confinement portion. However, as the government persuasively argued, the needs of this third party did not outweigh the need for punishment based simply on the nature of the conduct. I understood that defendant's wife and step-children also worked, but they should be able to accommodate this sentence given its modest length. The sentence varied from the guidelines, but because it was based on the peculiar facts of the case and the recommendations of the parties, it created no unwarranted disparity. See § 3553(a)(6).

## III. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 6 months, followed by three years of supervised release. I selected the maximum supervision term to ensure that defendant was monitored and his treatment needs addressed. As conditions, I ordered defendant to serve 6 months home confinement, provide access to all financial information requested by the supervising probation officer, and participate in a mental health treatment program. Other terms and conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 2nd day of May, 2008.

/s Lynn Adelman

LYNN ADELMAN
District Judge